Approved: _____
JACOB R. FIDDELMAN
Assistant United States Attorney

18MAG9527

Before: THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

------------------------------------ X
                                     :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA              :
                                     :  Violations of 18 U.S.C.
       - v. -                         :  §§ 1343, 1349, and 2
                                     :
IBRAHIM MIZRAHI,                      :  COUNTY OF OFFENSE:
     a/k/a "Albert Mizrahi,"          :  NEW YORK
     a/k/a "Abraham Mizrahi,"         :
                                     :
             Defendant.               :
                                     :
------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      JEREMY ROSENMAN, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office, Southern District of New York, and charges as follows:

**COUNT ONE**
(Wire Fraud)

      1.   From at least in or about April 2018, up to and including in or about August 2018, in the Southern District of New York and elsewhere, IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MIZRAHI participated in a scheme to defraud, by telephone, email, and wire transfers of funds, among other means and methods, a factoring company ("Factoring Company-1"), which had entered into a factoring agreement with an apparel company ("Apparel Company-1") owned and operated by MIZRAHI, by creating

and submitting invoices for factoring that were false, fraudulent, and fictitious and did not reflect goods that had been actually sold by Apparel Company-1 and, in furtherance of that scheme, transmitted and caused to be transmitted the wire transactions described below, and attempted to do so.

(Title 18, United States Code, Sections 1343, 1349, and 2.)

The bases for deponent's knowledge and for the foregoing charges are, in part, as follows:

2.   I am a Special Agent in the United States Attorney's Office for the Southern District of New York (the "USAO"), and I have been personally involved in the investigation of this matter. I have been employed by the USAO since 2016. I and other members of the investigative team have experience in fraud investigations and techniques associated with such investigations, including executing search warrants, financial analysis, and working with informants.

3.   This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

## I. RELEVANT DEFINITIONS, INDIVIDUALS, AND ENTITIES

### A. Factoring

4.   Based on my participation in this investigation, including my review of publicly-available information, and my training and experience, I have learned that "factoring" is a financial transaction in which a business sells its accounts receivable (invoices) to a third party (the factor). The factor advances payment on the invoices to the business, minus the factor's commission and other fees (such as interest) and then collects, or attempts to collect, on the invoices from the business's customers in due course. Factoring agreements are entered into, among other reasons, to accelerate cash-flow for a business to meet its short-term obligations.

### B. *Factoring Company-1*

5.      Based on my participation in this investigation, including my review of publicly available information, and my conversations with employees of Factoring Company-1 as a part of this investigation, I have learned that Factoring Company-1 is a corporation based in New York, New York, that specializes in, among other things, invoice factoring. Factoring Company-1 also engages in additional short-term lending to its factoring customers based on, among other things, its assessment of the factoring customer's current unfilled purchase orders (i.e., expected future accounts receivable).

### C. *Apparel Company-1*

6.      Based on my participation in this investigation, including my review of publicly available information, I have learned that Apparel Company-1 is a New York corporation based in New York, New York, that sells women's lingerie and other goods wholesale to retailers and invoices the retailer for those goods.

### D. *Ibrahim Mizrahi, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi"*

7.      Based on my participation in this investigation, including my review of publicly available information, I have learned that IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, is a principal of Apparel Company-1, directed and controlled Apparel Company-1 at all relevant times, and participated in creating and sending the false, fraudulent, and fictitious purchase orders and invoices to Factoring Company-1 as a part of the scheme described herein.

### II.    **THE FRAUDULENT SCHEME**

8.      As described in detail below, I have learned that from at least in or about April 2018, up to and including at least in or about August 2018, IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, engaged in a scheme in which he presented to Factoring Company-1 false, fraudulent, and fictitious invoices and purchase orders that did not reflect goods that had actually been ordered by Apparel Company-1's customers or sold by Apparel Company-1. Factoring Company-1 thus paid advances to Apparel Company-1 in reliance on what MIZRAHI falsely represented were Apparel Company-1's

accounts receivable and expected future accounts receivable.

9. Based on my review of Factoring Company-1 documents, documents from Apparel Company-1's customers, and conversations with employees of Factoring Company-1 and Apparel Company-1's customers, it appears that the attempted losses associated with the fraudulent factoring scheme are approximately $1,104,372.00.

### A. *Apparel Company-1's Factoring Agreement with Factoring Company-1*

10. Based on my knowledge and experience derived from this investigation, my review of documents maintained by Factoring Company-1, and my interviews of Factoring Company-1 employees, I have learned the following, in substance and in part, about how Apparel Company-1's factoring agreement with Factoring Company-1 generally worked:

    a. In December 2015, Apparel Company-1 entered into a factoring agreement with Factoring Company-1, in which Apparel Company-1 agreed to sell all of its invoices to Factoring Company-1, subject to Factoring Company-1 approving each individual invoice based on, among other things, a credit check of the applicable Apparel Company-1 customer to whom the invoice was directed. The purchase price of each such invoice was the amount of the invoice minus Factoring Company-1's service fee.

    b. Apparel Company-1 could request immediate advancement of the value of each assigned invoice, which advances could be issued in Factoring Company-1's discretion based on, among other things, its assessment of Apparel Company-1's current creditworthiness. Such advances were typically issued by wire transfer within a day of Factoring Company-1's receipt of assigned invoices and the request for the advance. Factoring Company-1 charged Apparel Company-1 interest on any such advances. Factoring Company-1 would then collect on each invoice from the applicable Apparel Company-1 customer in due course (though it had the right to and did subcontract out the actual collection duties as described below). Monies collected by Factoring Company-1 were credited to Apparel Company-1's account to pay back the advances to Apparel Company-1 and the interest thereon.

    c. Factoring Company-1 separately entered into a contractual agreement with another company ("Factoring

4

Company-2") for collection services. Pursuant to this separate agreement, which was expressly contemplated and permitted by Factoring Company-1's factoring agreement with Apparel Company-1, Factoring Company-1 would, in turn, assign to Factoring Company-2 each invoice assigned to it by Apparel Company-1. Factoring Company-2 would then handle the collection of payment from the Apparel Company-1 customers to whom the invoices were directed. Thus, Apparel Company-1's customers were instructed to remit payment on Apparel Company-1 invoices directly to Factoring Company-2.

### B. *Apparel Company-1's False, Fraudulent, and Fictitious Invoices*

11. Based on my knowledge and experience derived from this investigation, my review of documents maintained by Factoring Company-1, including communications from Factoring Company-1's customers, and my interviews of employees of Factoring Company-1, Factoring Company-2, and customers of Apparel Company-1, I have learned the following, in substance and in part:

a. From in or about April 2018, up to and including August 2018, approximately 89 invoices transmitted by IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, to Factoring Company-1, against which MIZRAHI requested and was paid advances by Factoring Company-1, were false, fraudulent, and fictitious. These false, fraudulent, and fictitipous invoices totaled approximately $1,104.372.00 and resulted in advance payments to Apparel Company-1 from Factoring Company-1 totaling approximately $1,093,000.00.

b. In particular, some of the invoices were entirely fabricated, and some reflected goods that were never shipped or for which the customer's order was subsequently canceled. In addition, some of the invoices transmitted by MIZRAHI to Factoring Company-1 (which on their face directed the customer to remit payment to Factoring Company-2) differed from the version of the invoice sent by Apparel Company-1 to the customer, which version directed the customer to remit payment directly to Apparel Company-1, thereby resulting in Apparel Company-1 receiving two payments on the same invoice: one from the customer directly and one advanced by Factoring Company-1.

c. As Factoring Company-2 attempted to collect on these false, fraudulent, and fictitious invoices from the applicable Apparel Company-1 customer, it recorded notes of the

refusals and explanations provided by those customers. Those notes, in which the customers identified the invoices as false, fraudulent, and fictitious, are reflected in Factoring Company-1's files. In addition, upon learning of these issues from Factoring Company-2, Factoring Company-1 contacted several of the Apparel Company-1 customers directly to inquire about the invoices and purchase orders in question. Those communications, in which the customers identify the purchase orders and invoices as false, fraudulent, and fictitious directly to Factoring Company-1, are also reflected in Factoring Company-1's files.

### C. *Example: May 17, 2018 Assignment of Invoices*

12. Based on my knowledge and experience derived from this investigation, my review of documents maintained by Factoring Company-1, and my conversations with Factoring Company-1 employees, I have learned, in substance and in part, the following regarding an example transmission of the false, fraudulent, and fictitious invoices in furtherance of the scheme to defraud described above:

a. On or about May 17, 2018, IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, sent an email to Factoring Company-1. Attached to the email were three invoices, each directed to a different Apparel Company-1 customer, totaling $79,024.80 (the "May 17, 2018 Invoices") and a cover sheet assigning the invoices to Factoring Company-1. The Apparel Company-1 customers to whom these invoices were directed are headquartered in Delaware, Florida, and South Carolina, respectively. In the email, MIZRAHI requested an advance of $65,000.00 against the May 17, 2018 Invoices, to be transmitted as a wire transfer to Apparel Company-1's bank account at a bank headquartered in New Jersey. To demonstrate creditworthiness, MIZRAHI also attached to the email a set of purchase orders totaling approximately $120,000 that MIZRAHI asserted in the email were all the unfilled orders that Apparel Company-1 had received from its customers.

b. On or about May 18, 2018, Factoring Company-1 accepted the May 17, 2018 Invoices and, based on the invoices and purchase orders attached to the email, issued the requested advance by wiring $65,000.00 from Factoring Company-1's account at a bank located in New York to Apparel Company-1's account at a bank headquartered in New Jersey.

c. On or about May 31, 2018, Factoring Company-1 assigned and transmitted the May 17, 2018 Invoices to

6

Factoring Company-2 for collection.

            d. Later, Factoring Company-2 reported to Factoring Company-1 that each of the three customers to whom one of the May 17, 2018 Invoices was directed had refused payment on its respective invoice and contested the validity of such invoice. Factoring Company-2 therefore declined to pay Factoring Company-1 the agreed-upon purchase price for the May 17, 2018 Invoices pursuant to the re-factoring agreement between Factoring Company-1 and Factoring Company-2.

            e. In or around August 2018, at least one of the companies to whom the May 17, 2018 Invoices were directed confirmed directly to Factoring Company-1 in writing that the invoice purportedly directed to it from Apparel Company-1 was false, fraudulent, and fictitious.

### D. *Scope of the Fraudulent Scheme*

            13. Based on my knowledge and experience derived from this investigation, my review of documents maintained by Factoring Company-1, and my conversations with employees of Factoring Company-1, Factoring Company-2, and customers of Apparel Company-1, I have learned, in substance and in part, that IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, appears to have engaged in the above fraudulent scheme using the same means and methods described above regarding the May 17, 2018 Invoices with respect to approximately 89 invoices transmitted on eleven different dates and totaling approximately $1,104,372.00, none of which has been collected from Apparel Company-1's customers. The transmittal of these false, fraudulent, and fictitious purchase orders and invoices induced Factoring Company-1 to issue eleven different wire transfer advances to Apparel Company-1 totaling approximately $1,080,000.00.

            14. As described above, based on my knowledge and experience derived from this investigation, my review of documents maintained by Factoring Company-1, and my conversations with employees of Factoring Company-1, I am aware that in furtherance of the scheme to defraud described above, IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, transmitted and caused to be transmitted numerous wire communications in interstate commerce for the purpose of executing such scheme and artifice, including but not limited to wire transfers from a bank headquartered in New York to a bank headquartered in New Jersey, and the

retransmission of false, fraudulent, and fictitious invoices from Factoring Company-1 in New York to customers located in Florida, Georgia, Pennsylvania, Texas, California, Delaware, Rhode Island, South Carolina, and New Jersey.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of IBRAHIM MIZRAHI, a/k/a "Albert Mizrahi," a/k/a "Abraham Mizrahi," the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

JEREMY ROSENMAN
Special Agent
U.S. Attorney's Office,
Southern District of New York

Sworn to before me this
8th day of November, 2018

THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8